HEARD APRIL TERM, 1876.

## SEIGLER vs. SEIGLER.

A guardian held responsible for the estate of his ward received in 1857 in the notes of private individuals, he having neglected to collect the same when he could have done it before the war commenced.

It is the duty of a guardian to collect choses in action received by him as the estate of his ward and to put the estate in the condition of investment. If he neglects this duty he will be responsible to his ward.

A guardian is accountable for the nominal value of debts which it was his duty to collect and which he does not shew were not collectable at the time.

Where the evidence furnishes no proper data for reducing the amounts paid in the years 1862, 1863 and 1864 by a guardian for his ward, he should be allowed the full amounts paid, and it is error to scale them under the Act.

BEFORE CARPENTER, J., AT EDGEFIELD, NOVEMBER, 1875.

This was a petition in the Probate Court by William M. Seigler against William K. Seigler, for account as guardian of the estate of the petitioner.

On the 5th of November, 1856, the defendant was appointed by the Court of Equity for Edgefield District and gave bond for the discharge of his duties. The estate of the ward at that time consisted of his distributive share of his father's estate, amounting to some two thousand eight hundred dollars in the notes of two individuals, one of them Hezekiah Edwards, whose note amounted to about $1,200, and the other Robert Cheatham, whose two notes (one for about $900, the other for about $700,) amounted to $1,600. In January, 1857, the defendant received said notes from the administrators of the petitioner's father, and in his return to the Ordinary charged himself with $2,812.24, the aggregate amount of said notes. In 1859, Edwards paid $200 on his note, and the defendant loaned it to L. B. Cochran upon his note, taking no surety, and in 1863 the defendant collected the balance due on the note of Edwards and invested $600 thereof in Confederate seven-thirty notes. In February, 1863, he took from Robert Cheatham a new note, with one S. B. Storm as surety thereon. This note was for $2,335.27, and included both of the previous notes, interest being added.

In 1862, 1863 and 1864, the defendant made payments for the petitioner.

The Probate Judge held that the defendant was liable for the full amounts of the notes of Edwards and Cheatham, and that the

payments made in 1862, 1863 and 1864 be scaled under the Acts of the Legislature.

The defendant appealed on the grounds:

1. Because His Honor Judge Boney erred in not allowing the defendant credit for the amount of the notes of Hezekiah Edwards, Little Berry Cockran and Robert Cheatham, when the evidence clearly established the facts that the defendant received said notes as the distributive share of his ward, the plaintiff, in his father's estate, and that the makers of said notes were perfectly solvent at the time the defendant received said notes for his ward.

2. Because the Probate Judge erred in not allowing the defendant credits for his investments of so much of the proceeds of the notes mentioned in the first ground of appeal as was collected by him in seven-thirty Treasury notes of the Confederate States.

3. Because the Probate Judge erred in scaling the payments made by the defendant for his ward, the plaintiff, during the years 1862, 1863 and 1864, under the Act of the Legislature commonly called the " Corbin Bill."

4. Because it is respectfully submitted that said decree is contrary to law, equity and good conscience.

His Honor the presiding Judge confirmed the decree of the Probate Judge.

The defendant appealed to this Court on the same grounds as those above stated, with some additional grounds.

*Gary*, for appellant:

The respondent called the appellant to account in the Probate Court for his guardianship of respondent's estate. The bulk of said estate consisted of notes given to John D. Seigler, of whom petitioner was a distributee, and not of money. The receipts in Confederate money and investments in Confederate securities were transactions in good faith on the part of the guardian. The returns and testimony, it is submitted, show not only that the Probate and Circuit Courts are in error in their conclusion that the guardian kept no separate account of the funds of his ward and thus committed a legal breach of trust, but that the loss to the ward is one which should not fall on the guardian.

An executor may show that an item in his return was charged by mistake.—*Wright* vs. *Wright*, 2 McC. Ch., 197; *Nance* vs. *Nance*, 1 S. C., 209.

The Court will open settlements made by mistake, though receipts in full be given.—*McCrae* vs. *Hollis*, 4 DeS., 122.

An execution marked *satisfied* may be shown not to have been really satisfied, and the execution may still retain its lien among creditors.—*Sims* vs. *Campbell*, 1 McC. Ch., 53.

The Court will relieve from a mistake of law as well as of fact.— *Lowndes* vs. *Chisolm*, 2 McC. Ch. R., 455; *Hopkins* vs. *Mazyck*, 1 Hill Ch., 242; *Gist* vs. *Gist*, B., 343.

There is clearly no foundation for the suggestion that a guardian is liable, at all events, for the solvency of a security which he takes for money due to the ward. In the management of their funds he is bound to exercise the same caution and circumspection that a prudent man would do in the conduct of his own concerns, and no more.

\*      \*      \*      \*      \*      \*      \*      \*

The power of judging of the sufficiency of the security is reserved to him.—*O. Dill* vs. *Young*, 1 McM. Eq., 155.

Guardians and all other persons acting in a fiduciary capacity are bound to exercise that diligence in collecting and managing the funds of their *cestui que trust* that a prudent man would exercise in the management of his own affairs.—*Glover* vs. *Glover*, McM., 153.

There is no rule in this State prescribing the securities on which trust funds shall be lent or invested; and where a trustee, in investing funds, acts faithfully and with common diligence and sagacity, he will not be liable if the funds be lost.—*Boggs* vs. *Adger*, 4 Rich. Eq., 408.

Unless there is evidence of neglect the Court will not hold an administrator responsible for a debt lost by the insolvency of the debtor.—*Clark* vs. *Wert*, 1 Strob. Eq., 185.

The rule laid down by Chancellor Wardlaw is that a trustee is answerable for those losses only which are occasioned by such acts or omissions as a prudent man could not do or omit in his own affairs.—*Nance* vs. *Nance*, 1 S. C., 121–2.

It is said that if there was no *mala fides* in the conduct of the trustee the Court will always favor him, for a trust is an office necessary in the concerns between man and man, and, if faithfully discharged, is attended with no small degree of trouble and anxiety.

"This Court," says Chancellor Kent, "has always treated trustees, acting in good faith, with great tenderness."—*Thompson* vs. *Brown*, 4 Johns. Ch., 628.

The liability of trustees, it is well remarked, *is not measured by the abstract rule of their duty.* The universal test of their liability or *exemption from liability is this: Is there, or is there not*, evidence of faithful endeavors to fulfill it? Any rule more rigorous than this, it is added, would deter prudent and honest men of ordinary capacity from accepting the appointment.—*Hext* vs. *Porcher*, 1 Strob. Eq., 171, 172; *Saunders* vs. *Rodgers*, 1 Rich., (N. S.,) 456.

To take advantage of a mistake committed in an evidently honest endeavor by the trustee to perform his duty, and to make him liable for the consequences, would neither square with the dictates of justice nor promote the true policy of the Court or the interest of its sanctions.—*Hext* vs. *Porcher*, 1 Strob. Eq., 170.

The rule of law, as administered in the Court, is stated to be, that when trustees *bona fide* exert themselves to discharge their duty, and, without exceeding the line of their duty, merely commit an error in judgment, unless there is a plain violation of trust, they shall not be *visited severely*; the fair exercise of their judgment is a protection to them, although the consequences may be attended with loss. And that where a trustee acts from moral necessity and according to the usage of mankind, if he acts as prudently for the trust as for himself, and according to the *usage of business*, he will not be liable for any loss that may occur.—Spence's Equitable Jurisdiction of the Court of Chancery, vol. 2, 932.

An executor is only required to manage the estate in his charge as a prudent man would his own, and, in case of loss, *the question of his liability cannot be resolved by any general rule*, but depends on the particular circumstances of each case.—*Bryan* vs. *Milligan*, 2 Hill Eq., 361.

Transactions in Confederate currency during the war and investments in Confederate securities, when properly made, must now be held to be as valid and binding as if made in times of peace in sound currency.— *Watkins' Exec's.* vs. *Page*, 21 Gratton's Va. R.

Government securities are the safest investment and are never at peril.—Hill on Trustees, 381; Lewin, 343.

An investment by a guardian of his ward's Confederate currency in Confederate bonds bearing interest was no breach of trust.— *Waller* vs. *Cresswell*, 4 S. C., 353.

If a guardian is liable for investing his ward's Confederate currency in Confederate bonds, he is only liable for the value in lawful money of the currency invested.—*Idem.*

These notes were used as money in nearly all the business transactions of many millions of people. They must be regarded, therefore, as a currency imposed on the community by irresistible force by a government obedience to whose authority in civil and local matters was not only a necessity but a duty. They were the only measure of value which the people had, and their use was a matter of almost absolute necessity.—*Thorington* vs. *Smith*, 8 Wallace, 11, 12, 13; see also opinion of Mr. Justice Willard in *Neely* vs. *McFadden*, 2, 5, 6 Rich., 173, 174; *Pickens* vs. *Dwight*, 4 S. C., 368; *Pearce* vs. *Venning*, 14 Rich. Eq., 86.

An unforeseen event, the consequence of a revolution in the government, is set down as a ground for relief in this jurisdiction under the head of accident.—1 Story's Eq., § 93; *Hinton* vs. *Kennedy*, 3 S. C., 481.

The Confederate government was a part of the government of South Carolina, and the State of South Carolina, in all her departments, recognized and dealt with the currency of the Confederate government as money, and this justified a trustee in accepting as a medium of payment the only currency that was in existence here. It is a question of good faith and common diligence, and is to be governed by the law of South Carolina.—*Pearce* vs. *Venning*, 14 Rich., 86.

*Abney*, contra:

There is no controversy as to the liability of the guardian for the $27.50 received from Mrs. M. Seigler in 1857, and the $57.32 and $58.22 received from the estate of Jeremiah Seigler respectively in 1867 and 1869. The appellant's grounds of appeal raise the question as to his liability for the $2,812.24 only. The respondent maintains that the appellant is also liable for the $2,812.24.

"The primary duty of the executor is that of administration," not investment; and the appellant *while executor* should have first collected the notes of Hezekiah Edwards and Robert Cheatham, which, as he claims, aggregated the $2,812.24, and administered fully before settling the estate of the ward's father and transferring them to himself as so much money.—*Nance* vs. *Nance*, 1 Rich.,

(N. S.,) 221; *Glover* vs. *Glover*, McM. Eq., 153; *Powell* vs. *Evans*, 5 Ves., 839; Hill on Trust., 380; Wil. on Ex., 846.

The guardian testifies that he took the notes and charged himself with them as so much money, believing them to be good.   He afterwards treated them as his individual property by taking new notes in his own name simply, and by not returning the money paid by Cheatham, or in any way accounting for it; and it is evident that he considered himself responsible to his ward for the full amount of the notes.   He therefore assumed the debt and cannot now shift upon the ward responsibility which has resulted in loss.— *Clark* vs. *Tompkins*, 1 S. C., 120; *Spear* vs. *Spear*, 9 Rich. Eq., 194; Hill on Trust., 371; *Freeman* vs. *Fairlee*, 3 Meri., 41; 2 Story's Eq. Juris., § 1270; Adams' Eq., p. 33, n., § 143.

*a.* If the original notes of Edwards and Cheatham were improper securities for investment, the guardian should have called them in and changed the investment as soon as practicable "into public securities, or bonds secured by lien on real estate, or at least bonds of third persons, with proper securities."—*Spear* vs. *Spear*, 9 Rich. Eq., 201; *Nance* vs. *Nance*, 1 S. C., 218; *Caffrey* vs. *Darby*, 6 Ves., 488; Hill on Trust., 380.

*b.* And "it is not sufficient excuse for the neglect of the trustee that the testator had himself created the objectionable security" and "considered the existing securities to be a sufficient investment."—Hill on Trust., 380; *Powell* vs. *Evans*, 5 Ves., 844; *DeMarmerville* vs. *Crompton*, 1 V. & B., 359; *Bullock* vs. *Wheatley*, 1 Coll., 130; Hemphill's App., 18 Penn. St., 303; *Spear* vs. *Spear*, 9 Rich. Eq., 194.

The original notes of Edwards and Cheatham were *improper* securities, because:

(*a.*) Proper "securities should primarily consist of mortgages of unencumbered real estate of a value sufficient to guarantee the debt against all contingencies liable to occur or capable of being foreseen;" and "bonds of individuals should not be taken in lieu of real securities, unless unobjectionable investments cannot, in the exercise of reasonable diligence, be procured."   And the testimony fails to show that real securities could not be procured.— *Nance* vs. *Nance*, 1 S. C., 224; *Allen* vs. *Gaillard*, 1 S. C., 279.

(*b.*) The burden is upon the guardian to show a proper investment, upon an accounting with the *cestui que trust.*—*Ibid;* 1 Story's Eq. Juris., § 468; *Lupton* vs. *White*, 15 Ves., Jr., 432.

(c.) There was no security to the original notes, and no invest-
ment without sureties is good.—*Nance* vs. *Nance*, 1 S. C., 226 ;
*Spear* vs. *Spear*, 9 Rich. Eq., 184.

The notes as changed afterwards and made payable to appellant
in his individual capacity were not valid investments, since the
guardian fails to show that he could not invest in public securities,
or bonds secured by lien on real estate, and the necessity and
propriety of investing merely in notes with only one surety.—
*Nance* vs. *Nance*, 1 S. C., and cases cited.

If we admit that Edwards's note, with Sheppard as surety, was
a valid investment, then the guardian is still liable, because—

*a.* It was collected to relieve the surety, and for no advantage
to the ward.—*Cureton* vs. *Watson*, 3 S. C., 456 ; *Sanders* vs.
*Rogers*, 1 S. C., 459.

*b.* The $200 was lent to Cochran, and his note taken therefor
without surety.—*Nance* vs. *Nance*, 1 S. C., 226.

The guardian acted without warrant of law in receiving the
$600 in Confederate currency, and investing it in seven thirty Confed-
erate notes, if the note was the property of his ward, and he should
sustain the loss.—*Meyer* vs. *Mordecai*, 1 S. C., 383 ; *Fitzsimmons*
vs. *Fitzsimmons*, *ibid*, 413 ; *Womack* vs. *Austin*, *ibid*, 440 ; *Sanders*
vs. *Rogers*, *ibid*, 453 ; *Cureton* vs. *Watson*, 3 S. C., 458 ; *Horn* vs.
*Lockhart*, 17 Wallace, 570.

The receiving of the balance of the note in Confederate curren-
cy, which is now on his hands worthless, does not relieve him.—*Ibid.*

Were it admitted that the note of Cheatham, with Strom as
surety, was a proper investment, and for the ward, then still the
guardian is liable, because he delayed so long after the war to
bring any action on the note against Cheatham, and has never
brought any action against Strom or the estate which he left; nor
does he show that he cannot collect the money out of Cheatham
or Strom's estate.—*Glover* vs. *Glover*, McM. Eq., 153.

The appellant's fifth ground of appeal is unfounded, as no ques-
tion was made before the Circuit Court as to scaling ; and the
respondent understood him as thereby abandoning his third ground
of appeal from the Probate Court.

It is submitted by the respondent that the judgment of the
Circuit Court affirming that of the Probate Court is in accord
with the law and equity involved in the case.

May 18, 1876.   The opinion of the Court was delivered by

WILLARD, A. J.   We find no sufficient ground to reverse the decree of the Circuit Court.

The guardian received the estate of his ward in 1857.   The estate then consisted of choses in action arising on notes of individuals.   It was the clear duty of the guardian to collect demands of this nature and to put the estate in the condition of investment. The principles applicable to this duty are stated by us in *Nance* vs. *Nance*, 1 S. C., 209.   It is stated that it was not practicable at the place of residence of the guardian and his ward to make investments conformable to the general principles settled in that case. That fact does not appear in evidence and cannot be assumed.   The guardian neglected this important duty until the disturbed condition of business resulting from the war rendered it impracticable to place the estate in a condition of proper security.   The subsequent inability of the guardian to make judicious investments must be referred to his neglect to place the estate in proper condition at an earlier day.

The guardian was properly held accountable for the nominal value of the debts which it was his duty to collect, he not having made it to appear that such debts were not collectible at the time when they should have been collected.

The decree was clearly wrong in not allowing to the guardian the full amount advanced for his ward in Confederate currency.   The evidence afforded no proper data for reducing the amounts thus paid to any other standard than that of the current value of Confederate money.

The counsel for appellant urges that he was deprived of a full hearing before the Circuit Court on the appeal from the Probate Court.   It will not be necessary to consider whether such fact could affect the validity of the decree of the Circuit Court, for it appears that, subsequently to the decree being made, the appellant's counsel was heard, and the Court, on such hearing, refused to disturb the decree.   The counsel for appellant has received a full hearing in this Court, and all matters are open before us as completely as they were in the Circuit Court, and we see no good reason for sending the case back for further argument there.

The decree of the Circuit Court should be modified to conform to the principles of this decree, and the cause remanded for the correction of the account accordingly.

*Moses*, C. J., and *Wright*, A. J., concurred.